BLECHER & COLLINS, P.C.
MAXWELL M. BLECHER (SB# 026202)
COURTNEY A PALKO (SB# 233822)
515 South Figueroa Street, 17th Floor
Los Angeles, California 90071-3334
Telephone: (213) 622-4222
Facsimile: (213) 622-1656
E-mail: mblecher@blechercollins.com
E-mail: cpalko@blechercollins.com

Attorneys for Plaintiff
ROCK RIVER COMMUNICATIONS, INC.

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| ROCK RIVER COMMUNICATIONS, INC., | CASE NO. CV08-00635 CAS AJW |
| Plaintiff, | COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR: |
| vs. | SHERMAN ACT § 2 (15 U.S.C. § 2) AND CLAYTON ACT § 7 (15 U.S.C. § 18); |
| UNIVERSAL MUSIC GROUP, INC., | |
| Defendant. | INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE |
| | (DEMAND FOR JURY TRIAL) |

Plaintiff ROCK RIVER COMMUNICATIONS, INC., files this Complaint against defendant UNIVERSAL MUSIC GROUP, INC. and, demanding trial by jury, claims and alleges as follows:

## I.

## JURISDICTION AND VENUE

1. Counts One and Two of this Complaint are filed and these proceedings are instituted against the above-named defendant under Sections 4 and 16 of the Clayton Act (15 U.S.C. § 15 and § 26) to recover

1 | treble damages from and secure injunctive relief against the above-named
2 | defendant for its violations of the federal antitrust laws.  Accordingly, the
3 | Court has original jurisdiction for these federal antitrust claims pursuant to
4 | 28 U.S.C. § 1337.

5 | 2.  Count Three of this Complaint is filed against the above-named
6 | defendant to secure compensatory and punitive damages and injunctive
7 | relief against the above-named defendant for its violations of state law.
8 | This Court has jurisdiction over the Count Three claims pursuant to 28
9 | U.S.C. § 1332 because there is complete diversity of citizenship and
10 | because the amount in controversy exceeds $75,000.  Moreover, the Court
11 | has supplemental jurisdiction over those claims pursuant to 28 U.S.C. §
12 | 1367 because those claims arise from the same transactions and from a
13 | common nucleus of operative facts as alleged in Counts One and Two.

14 | 3.  Defendant UNIVERSAL MUSIC GROUP, INC. transacts
15 | business, maintains an office, and may be found within the Central District
16 | of California.  The interstate trade and commerce involved and affected by
17 | the alleged violations of the antitrust laws was carried on, in part, within
18 | this District and at least some of the unlawful acts described herein were
19 | performed or made effective within this District.  Accordingly, the Central
20 | District of California is an appropriate venue for this action.

21 | **II.**

22 | **THE PARTIES**

23 | 4.  Plaintiff ROCK RIVER COMMUNICATIONS, INC. ("RR") is a
24 | Vermont corporation with its principal place of business in Putney,
25 | Vermont.  RR is engaged in the production, sale, and distribution of record
26 | albums, including the Bob Marley and the Wailers album "Roots, Rock,
27 | Remixed," as the first in a series of Marley and other reggae remix albums.
28 |

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

5.  Defendant UNIVERSAL MUSIC GROUP, INC. ("UMG") is a Delaware corporation with its principal place of business located at 10 Universal City Plaza, Universal City, California 91608.  Defendant UMG is the largest record company in the world and owns several record labels that sign artists, produce records, and market, promote, and sell those records.

## III.

## NATURE OF TRADE AND COMMERCE

6.  The relevant product market is the sale and distribution of musical sound recordings (or "records") of the reggae genre and the relevant geographic market is the United States.  For the reasons set out in paragraph 8 below, there is a submarket of reggae music that can be defined as the Bob Marley market.  Defendant distributes and sells musical sound recordings of the reggae genre under various labels in trade and commerce throughout the United States and in foreign markets.  Reggae is a genre of contemporary Caribbean music developed in Jamaica in the late 1960s, which is often associated with political protest, and which combines elements of Jamaican folk music with American rhythm and blues music. Musically, reggae has a unique rhythm style and tempo derived from Jamaican ska and rock-steady music.  One of the unique characteristics of reggae music is that the "offbeat" is emphasized, with an accent on the third beat of a four beat measure.  Reggae music is a relevant market or submarket, separate and distinct from other genres not only because of its unique musical characteristics, but also the attendant cultural, imagery, and lifestyle characteristics.

7.  The Wailers, a musical group started by Bob Marley with Peter Tosh and Bunny Wailer in 1963, are the most recognized reggae group

BLECHER &amp; COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

1   worldwide.  Bob Marley and the Wailers have made hundreds of recordings
2   of reggae music.

3        8.  In 1973, Bob Marley signed a recording contract with Chris
4   Blackwell's Island Records ("Island"), which is now wholly owned by UMG,
5   and recorded for Island until his death in 1981.  UMG has sold millions of
6   copies of Bob Marley's albums, accounting for a majority of the reggae
7   albums sold worldwide.  More than 25 years after his untimely death, Bob
8   Marley remains the absolutely dominant reggae artist in the world and has
9   come to define the reggae genre in a manner that no other artist, in any
10   other genre, has done.  Of the top grossing Reggae albums featuring Bob
11   Marley Island Records/UMG recordings represent more than 90% of the
12   market measured over the past eleven years and UMG distributed Reggae
13   music represents about 81%of the total Reggae market.

14        9.  During the period 1969 - 1972, and prior to Mr. Marley signing
15   with Island, Bob Marley and the Wailers recorded at Lee Perry's studio a
16   number of masters, most of which were produced and owned by Lee Perry.
17   For many years, Lee Perry licensed these masters (believed to be 48 in
18   number) to various record labels on a non-exclusive basis, giving certain
19   labels the right to further sub-license the recordings to others.  Many of the
20   resulting record albums produced by these various labels embody the
21   same masters.

22        10.  San Juan Music ("San Juan"), a record label in Parlin, New
23   Jersey, is one of Lee Perry's major licensees and has been widely selling
24   and distributing Marley/Wailers albums on its own San Juan label as well
25   as sub-licensing the master recordings to other labels for at least 27 years.
26   Plaintiff licensed from San Juan the underlying master recordings, which
27   Plaintiff then used to create new remixed recordings ("remixes"), the
28   copyrights of which are wholly owned by Plaintiff.  Plaintiff then compiled

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

1   these remixes onto an album entitled "Roots, Rock, Remixed."  Plaintiff
2   also entered into a "name/likeness/licensing/publishing" agreement with
3   the Marley estate ("Estate") and with the Marley family's publisher, Blue
4   Mountain Music Publishing.  Plaintiff is the first entity to license name and
5   likeness rights for these 1969-1972 Marley/Wailers recordings from the
6   Estate and the first to compensate the Estate for the use of Mr. Marley's
7   artist performances on these masters.  The Estate agreed to and endorsed
8   adding Bob Marley's "Tuff Gong" record label logo to Plaintiff's album
9   packaging, giving the ultimate stamp of approval and legitimacy in the
10   reggae and Bob Marley markets.  Plaintiff is informed and believes that
11   UMG perceived this as a threatening competitive advantage and was
12   similarly threatened by Plaintiff's cooperative business dealings with the
13   Estate, with whom UMG has been engaged in a litigious posture for years.
14   UMG has also been engaged in a series of business disputes and litigation
15   with Chris Blackwell, the former owner of Island Records and the guardian
16   of the Marley estate, over the sale of Island to UMG and UMG's treatment
17   of the Marley family and the Bob Marley legacy.

18       11.  Plaintiff's Marley remix recordings are of further particular value
19   due to the multiple potential income streams which Plaintiff intended to
20   capture through licensing agreements for film, television, advertising, and
21   mobile phone ringtones (markets UMG has sought to control with respect
22   to Bob Marley's recordings) since Plaintiff's unprecedented royalty sharing
23   agreement with the Marley estate and Marley family's publishing company
24   gave Plaintiff a distinct market advantage, which UMG effectively crushed
25   and eliminated in order to suppress marketplace availability and to drive up
26   the price of UMG's assets, especially its Island Bob Marley master
27   recordings.

28

1    12.  Lee Perry also licensed the same Marley/Wailers recordings to
2    Trojan Records, which was later acquired by Sanctuary which, in turn, was
3    acquired by defendant UMG in or about August 2007.  Plaintiff is informed
4    and believes that Trojan's license from Lee Perry either lapsed or was
5    terminated due to Trojan's failure to pay monies contractually obligated to
6    Perry.

7    13.  From 1991 until at least 2000, UMG itself became one of San
8    Juan's many licensees, having executed licenses with, and paid royalties
9    to San Juan Music for more than a dozen of the identical Marley/Wailers
10   sound recordings subsequently licensed by Plaintiff for "Roots, Rock,
11   Remixed", which UMG then compiled into at least two full length record
12   albums and which UMG sold and distributed on records and compact
13   discs.  These are exactly the same underlying recordings that UMG is now
14   stopping Plaintiff from distributing in the marketplace.

15   14.  Another company known as JAD has also been selling the
16   1969-1972 Marley/Wailers recordings for a number of years.  It is unclear
17   whether JAD had a license from Lee Perry or was operating without any
18   license whatsoever.  In 2004, UMG signed a 10-year license with JAD for a
19   number of master recordings, including several of the same underlying
20   master recordings recorded by Lee Perry.

21   15.  The essence of this claim is that UMG is now using these two
22   conflicting and contradictory "sets of rights" to exclude Plaintiff from the
23   reggae genre and the Bob Marley genre of the music sound recording
24   market.  Plaintiff is informed and believes that UMG's interest is also to
25   protect the Island Marley masters and ultimately to establish them as the
26   only available Bob Marley masters, especially for licensing use in film, TV,
27   advertising, and mobile phone ringtones.  Plaintiff is also informed and
28   believes that another motivation of UMG is to suppress competition with its

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

1  own album incorporating Bob Marley remixes, which it released in October
2  2007, four months after Plaintiff's album was released.

3      16.   During the relevant period of time, Plaintiff distributed its Marley
4  remix sound recordings through a company called Quango Music with
5  which Plaintiff had entered into an exclusive distribution agreement.

6      17.   In early October 2007, UMG asserted copyright protection over
7  and against Plaintiff with regard to "Roots, Rock, Remixed" and caused:

8          (a) Quango to stop distributing Plaintiff's albums, including
9  "Roots, Rock, Remixed," and

10         (b) Apple, Inc. ("Apple") to withdraw "Roots, Rock, Remixed"
11 from its iTunes digital music service under threat of contributory
12 infringement, and

13         (c) EMI Music Group to withdraw from negotiations with Plaintiff
14 to distribute Plaintiff's album worldwide outside North America under threat
15 of contributory infringement, and

16         (d) Music retailers such as Amazon, Barnes & Noble, Borders
17 and Virgin to cancel the previously committed in-store retail promotions for
18 Plaintiff's album, which still had to be paid for by Plaintiff.

19      **Count One - Violation of Sherman Act § 2 (15 U.S.C. § 2)**

20     18.   Plaintiff repeats and realleges Paragraphs 1 through 17 of the
21 Complaint with the same force and effect as though fully set forth herein.

22     19.   UMG is engaged in a course of conduct in an attempt to
23 monopolize the reggae genre and the Bob Marley genre of sound
24 recordings in the United Sates in violation of Section 2 of the Sherman Act
25 (15 U.S.C. § 2).

26     20.   UMG is acting with specific intent to achieve a monopoly and
27 given its high market share as alleged in paragraph 8 and its overall size
28

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

1   and strength, it certainly has a reasonable probability of achieving such
2   monopoly power.

3   **Count Two - Violation of Section 7 of Clayton Act (15 U.S.C. § 18)**

4       21.   Plaintiff repeats and realleges Paragraphs 1 through 17 of the
5   Complaint with the same force and effect as though fully set forth herein.

6       22.   UMG's acquisition of Sanctuary and its long term license with
7   JAD, together and individually in conjunction with its ownership of Island
8   Records, give it a dominant position in the reggae genre and Bob Marley
9   genre sound recording markets.   These are assets by which UMG has
10  restrained trade and with which UMG threatens to create a monopoly in the
11  reggae genre and Bob Marley genre sound recording markets, in violation
12  of Section 7 of the Clayton Act (15 U.S.C. § 18).

**VI.**

**EFFECTS OF THE VIOLATIONS**

15      23.   The actual, probable, and intended effects of defendant's acts
16  and practices, as alleged herein, have been to injure competition by:

17      (a) depriving consumers of choice and of the best products at
18  the lowest prices;

19      (b) limiting competition among and between producers of
20  reggae sound recordings;

21      (c) restricting choices, lowering quality, and raising prices; and

22      (d) depriving other reggae sound recording companies of their
23  ability to innovate or compete by and through their respective trademarks.

24      24.   In the absence of the unlawful conduct by UMG, Plaintiff would
25  have continued selling "Roots, Rock, Remixed" through its distributor
26  Quango and through Apple's iTunes.   Additionally, Plaintiff would have sold
27  its recordings in the mobile phone ringtone market and would have
28  licensed its recordings for use in film, television, and advertising.   Instead,

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

1   defendant caused Plaintiff to lose these outlets for "Roots, Rock,

2   Remixed," effectively shutting down the album's initial marketing and

3   promotion rollout and decimating Plaintiff's lucrative 2007 4th quarter and

4   holiday season market for Plaintiff's album.

5        25.  As a direct and proximate result of defendant's unlawful

6   conduct, Plaintiff has lost sales and goodwill and will lose even further

7   sales and goodwill unless defendant's unlawful conduct is restrained by

8   this Court.  Accordingly, Plaintiff has suffered a loss of past profits and is

9   likely to sustain a loss of profits in the future.  Additionally, Plaintiff has

10  sustained a reduction in the value of its business as a going concern.

11  Plaintiff has not yet quantified the extent of its respective pecuniary

12  damage, but believes it will be in the millions of dollars.

13  **Count Three -- Intentional Interference with Prospective Economic**

14  **Advantage**

15       26.  Plaintiff repeats and realleges Paragraphs 2 through 22 of the

16  Complaint with the same force and effect as though fully set forth herein.

17       27.  Plaintiff has had, for many years, valuable and reasonable

18  business relationships from existing and prospective customers, including

19  without limiting the generality of the foregoing, Quango which was a

20  distributor of plaintiffs' albums and Apple I-tunes which made the plaintiff's

21  music available to users through its digital music service, EMI, and retailers

22  Amazon, Barnes & Noble, Borders and Virgin.

23       28.  Defendant UMG knew or should have known of these contracts

24  and business relationships between Rock River and its actual and

25  prospective customers, including, without limiting the generality of the

26  foregoing, Quango, Apple I-tunes, EMI, Amazon, Barnes & Noble, Borders

27  and Virgin, and knew of Rock River's expectations of continued or

28

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

1  prospective business relationships with each such existing and potential

2  customers.

3      29. Defendant has engaged in the wrongful conduct alleged with the

4  specific intent of interfering with and destroying those business

5  relationships and with the specific intent of causing termination of the Rock

6  River relationship with its distributor, Quango, as well as Apple I-Tunes,

7  EMI, Amazon, Barnes & Noble, Borders and Virgin. Defendant UMG has,

8  with malicious intent, actually interfered with and destroyed those

9  relationships and the business expectancy associated with each of them.

10                    **PRAYER**

11      **WHEREFORE**, Plaintiff prays for judgment against defendant as

12  follows:

13      1.  On Counts One and Two, treble its actual damages, plus costs, a

14  reasonable attorneys' fee and injunctive relief for the violations of Section 2

15  of the Sherman Act (15 U.S.C. § 2) and § 7 of the Clayton Act (15 U.S.C. §

16  18);

17      2.  On Count Three for compensatory and exemplary damages for

18  defendant's intentional interference with prospective economic advantage;

19  and

20      3.  For costs and such other and further relief as may be just and

21  proper.

22  Dated:   January 30, 2008          BLECHER & COLLINS, P.C.
                                        MAXWELL M. BLECHER
23                                      COURTNEY A. PALKO

24

25                                      By:

26                                      Maxwell M. Blecher
                                        Attorneys for ROCK RIVER
27                                      COMMUNICATIONS, INC.

28

10

## **JURY TRIAL DEMAND**

Plaintiff hereby demands a trial by jury pursuant to the Federal Rules of Civil Procedure, Rule 38(b) and Local Rule 38-1.

Dated:   January 30, 2008

BLECHER & COLLINS, P.C.
MAXWELL M. BLECHER
COURTNEY A. PALKO

By: _____
Maxwell M. Blecher
Attorneys for ROCK RIVER
COMMUNICATIONS, INC.

#35543

11

AO 440 (Rev. 8/01)  Summons in a Civil Action

# United States District Court

## Central District of California

ROCK RIVER COMMUNICATIONS, INC.

**SUMMONS IN A CIVIL CASE**

V.

UNIVERSAL MUSIC GROUP, INC.

CASE NUMBER:

CV08-00635 CAS AJWx

**TO:** (Name and address of Defendant)

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

MAXWELL M. BLECHER, ESQ.
BLECHER & COLLINS, P.C.
515 SOUTH FIGUEROA STREET
17TH FLOOR
LOS ANGELES, CALIFORNIA  90071-3334

an answer to the complaint which is served on you with this summons, within <u>TWENTY (20)</u> days after service of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the Clerk of this Court within a reasonable period of time after service.

SHERRI R. CARTER

JAN 3 1 2008

CLERK

DATE

(By) DEPUTY CLERK

AO-440

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)
ROCK RIVER COMMUNICATIONS, INC.

**DEFENDANTS**
UNIVERSAL MUSIC GROUP, INC.

**(b)** County of Residence of First Listed Plaintiff (Except in U.S. Plaintiff Cases): Putney, Vermont

County of Residence of First Listed Defendant (In U.S. Plaintiff Cases Only): Los Angeles

**(c)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)
MAXWELL M. BLECHER, ESQ. (SB# 026202)
BLECHER & COLLINS, P.C.
515 SOUTH FIGUEROA STREET
17TH FLOOR
LOS ANGELES, CALIFORNIA  90071-3334
TELEPHONE:  (213) 622-4222

Attorneys (If Known)

**I. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff   ☒ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant   ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes   ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes   ☐ No     **MONEY DEMANDED IN COMPLAINT: $** 0.00

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
SHERMAN ACT § 2 (15 U.S.C. § 2) AND CLAYTON ACT § 7 (15 U.S.C. § 18)

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☒ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 540 Mandamus/Other | ☐ 790 Other Labor Litig. |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | PROPERTY RIGHTS |
| ☐ 490 Cable/Sat TV | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | FORFEITURE/PENALTY | ☐ 820 Copyrights |
| ☐ 810 Selective Service | ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 190 Other Contract | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 195 Contract Product Liability | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | SOCIAL SECURITY |
| ☐ 890 Other Statutory Actions | ☐ 196 Franchise | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | REAL PROPERTY | | ☐ 445 American with Disabilities - Employment | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | ☐ 210 Land Condemnation | | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | ☐ 220 Foreclosure | | ☐ 440 Other Civil Rights | ☐ 660 Occupational Safety/Health | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 230 Rent Lease & Ejectment | | | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 240 Torts to Land | | | | FEDERAL TAX SUITS |
| ☐ 900 Appeal of Fee Determina-tion Under Equal Access to Justice | ☐ 245 Tort Product Liability | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 290 All Other Real Property | | | | ☐ 871 IRS - Third Party 26 USC 7609 |

**VIII(a). IDENTICAL CASES:** Has this action been previously filed and dismissed, remanded or closed? ☒ No   ☐ Yes
If yes, list case number(s):

**FOR OFFICE USE ONLY:** Case Number: _____

CV-71 (07/05)                                CIVIL COVER SHEET                                Page 1 of 2
                                                                                              CCD-JS44

CV08-00635

UNITED STA   : DISTRICT COURT, CENTRAL DISTRICT C   ALIFORNIA
CIVIL COVER SHEET

#### AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

VIII(b). **RELATED CASES:** Have any cases been previously filed that are related to the present case?   [ X ] No   [ ] Yes

If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)   [ ] A. Arise from the same or closely related transactions, happenings, or events; or

[ ] B. Call for determination of the same or substantially related or similar questions of law and fact; or

[ ] C. For other reasons would entail substantial duplication of labor if heard by different judges; or

[ ] D. Involve the same patent, trademark or copyright, and one of the factors identified above
in a, b or c also is present.

---

IX. **VENUE:** List the California County, or State if other than California, in which **EACH** named plaintiff resides (Use an additional sheet if necessary)

[ ] Check here if the U.S. government, its agencies or employees is a named plaintiff.

PUTNEY, VERMONT

List the California County, or State if other than California, in which **EACH** named defendant resides.   (Use an additional sheet if necessary).

[ ] Check here if the U.S. government, its agencies or employees is a named defendant.

LOS ANGELES (UNIVERSAL CITY) CALIFORNIA

List the California County, or State if other than California, in which **EACH** claim arose.   (Use an additional sheet if necessary)

**Note:** In land condemnation cases, use the location of the tract of land involved.

THROUGHOUT THE UNITED STATES

---

X. SIGNATURE OF ATTORNEY (OR PRO PER):   MAXWELL M. BLECHER            Date 1/30/2008

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

---

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |