UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-635 CAS (AJWx) | Date | November 16, 2009 |
|---|---|---|---|
| Title | ROCK RIVER COMMUNICATIONS, INC. v. UNIVERSAL MUSIC GROUP, INC. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| CATHERINE JEANG | LAURA ELIAS | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Maxwell Blecher | Joshua Groban |
| Courtney Palko | Glenn Pomerantz |

**Proceedings:**   [UNDER SEAL] PLAINTIFF'S MOTION FOR REVIEW OF RULING OF MAGISTRATE JUDGE ANDREW J. WISTRICH (filed 10/19/09)

[UNDER SEAL] PLAINTIFF'S MOTION FOR LEAVE TO FILE A FOURTH AMENDED COMPLAINT UNDER SEAL (filed 10/20/09)

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (filed 07/23/09)

## I.   INTRODUCTION & BACKGROUND

Plaintiff Rock River Communications, Inc. is a producer, seller, and distributor of music records. TAC ¶ 4. In 2006, plaintiff created certain "remixed" recordings of reggae music originally recorded by Bob Marley and the Wailers between 1969 and 1972 ("the Recordings"). TAC ¶¶ 10, 12. Plaintiff acquired licenses for the Recordings from a company called San Juan Music ("San Juan"). TAC ¶ 11. San Juan allegedly possessed a non-exclusive license for the Recordings that it had acquired from Lee Perry, the original producer of the Recordings. Id.

Defendant, Universal Music Group, Inc., is the owner of Island Records. TAC ¶ 8. Bob Marley recorded for Island Records between 1973 and his death in 1981, and defendant, through Island Records, controls the rights to a large percentage of Marley's recordings Id. Defendant allegedly acquired a non-exclusive interest in the Recordings through its acquisition of Polytel Canada and Sanctuary Records, both of which allegedly

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-635 CAS (AJWx) | Date | November 16, 2009 |
|---|---|---|---|
| Title | ROCK RIVER COMMUNICATIONS, INC. v. UNIVERSAL MUSIC GROUP, INC. | | |

possessed non-exclusive rights to the Recordings. TAC ¶¶ 14, 15. Defendant also acquired an allegedly exclusive interest in the Recordings pursuant to a license from a company known as JAD.[1] TAC ¶ 16. In October 2007, defendant sent "cease and desist" letters to several distributors of plaintiff's remixed recordings, including some internet-based distributors, asserting that it had exclusive rights to the Recordings and threatening copyright infringement actions. TAC ¶ 28. Due to these threats, the distributors stopped distributing plaintiff's recordings. Id.

On January 31, 2008, plaintiff filed a complaint claiming that defendant's "cease and desist" letters violated Section 2 of the Sherman Act and constituted the tort of intentional interference with prospective business advantage. After defendant filed a motion to dismiss, plaintiff filed its first amended complaint. On August 25, 2008, this Court granted in part and denied in part defendant's motion to dismiss plaintiff's first amended complaint with leave to amend. On September 15, 2008, plaintiff filed its second amended complaint. On December 22, 2008, the Court granted defendant's motion to dismiss with leave to amend. The Court further granted plaintiff 60 days within which to conduct discovery.

On April 2, 2009, plaintiff filed its third amended complaint ("TAC") alleging claims against defendant for (1) attempting to monopolize the reggae genre of sound recordings in the United States in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2; (2) restraining trade and threatening to create a monopoly in the reggae genre sound recordings market in violation of Section 7 of the Clayton Act, 15 U.S.C. § 18; (3) intentional interference with prospective economic advantage; and (4) knowingly and materially misrepresenting that plaintiff's album infringed defendant's copyright, in violation of the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 512(f).

On July 23, 2009, defendant filed a motion for summary judgment. On August 14, 2009, the Court continued the hearing on the motion for summary judgment for 90 days

---

[1] The license provides that "Subject to Clause 2.2, Licensor hereby grants to the Company an exclusive license during the Term and throughout the Territory [defined as 'the World'] to exercise any and all of the rights exercisable by a copyright owner in respect of the entire copyright (whether vested, contingent, or future) and all rights of action and all other rights of whatever nature. . . ." Groban Decl. Ex. A. at § 2.1

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-635 CAS (AJWx) | Date | November 16, 2009 |
|---|---|---|---|
| Title | ROCK RIVER COMMUNICATIONS, INC. v. UNIVERSAL MUSIC GROUP, INC. | | |

to enable plaintiff to conduct discovery on whether defendant is a proper defendant in this case.

On October 16, 2009, plaintiff filed a motion for review of the October 2, 2009 ruling of Magistrate Judge Wistrich ("the Magistrate Judge"), a motion for leave to file a fourth amended complaint ("FAC"), and a supplemental opposition to the motion for summary judgment as to the TAC. On October 30, 2009, defendant filed its opposition to plaintiff's motion for leave to file a fourth amended complaint, and its response to plaintiff's supplemental opposition to defendant's motion for summary judgment. On November 2, 2009, defendant filed its opposition to plaintiff's motion for review of the Magistrate Judge's ruling. On November 10, 2009, plaintiff filed replies to defendant's oppositions. After carefully considering the arguments set forth by the parties, the Court finds and concludes as follows.

## II. LEGAL STANDARD

### A. Review of Magistrate Judge's Order

Pursuant to Fed. R. Civ. P. 72(a), a party may file objections to a magistrate judge's non-dispositive order within ten days, and "[t]he district judge to whom the case is assigned shall consider such objections and shall modify or set aside any portion of the Magistrate Judge's order found to be clearly erroneous or contrary to law." Rule 72-2.1 of the Local Rules sets forth the same standard. See also 28 U.S.C. § 636(b)(1)(A); Grimes v. City and County of San Francisco, 951 F.2d 236, 241 (9th Cir. 1991).

### B. Leave to Amend Pleadings Pursuant to Fed. R. Civ. Pro. 15

Because the Court has not entered a pretrial scheduling order pursuant to Fed. R. Civ. P. 16 that established a deadline for amending pleadings, Fed. R. Civ. P. 15 applies. Fed. R. Civ. P. 15 provides that after a responsive pleading has been filed, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a).

Where leave to amend is required, the decision whether to grant leave to amend "is entrusted to the sound discretion of the trial court." Jordan v. County of Los Angeles, 669 F.2d 1311, 1324 (9th Cir. 1982), vacated on other grounds, 459 U.S. 810 (1982). "Five

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-635 CAS (AJWx) | Date | November 16, 2009 |
|---|---|---|---|
| Title | ROCK RIVER COMMUNICATIONS, INC. v. UNIVERSAL MUSIC GROUP, INC. | | |

factors are taken into account to assess the propriety of a motion for leave to amend: bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously amended the complaint." Johnson v. Buckley, 356 F.3d 1067, 1077 (9th Cir. 2004) (citing Nunes v. Ashcroft, 348 F.3d 815, 818 (9th Cir.2003)). "Some courts have stressed prejudice to the opposing party as the key factor." Texaco v. Ponsoldt, 939 F.2d 794, 798 (9th Cir. 1991). However, "[u]ndue delay is a valid reason for denying leave to amend.'" Id. (quoting Contact Lumber Co. v. P.T. Moges Shipping Co., 918 F.2d 1446, 1454 (9th Cir. 1990)); but see Bowles v. Reade, 198 F.3d 752, 758 (9th Cir. 1999) ("Undue delay by itself, however, is insufficient to justify denying a motion to amend."). Further, "the liberality of Rule 15(a) does not mean that amendment will be allowed regardless of the diligence of the moving party. Where the party seeking amendment knows or should know of the facts upon which the proposed amendment is based but fails to include them in the original complaint, the motion to amend may be denied." Jordan, 669 F.3d at 1324. And "[l]ate amendments to assert new theories are not reviewed favorably when the facts and the theory have been known to the party seeking amendment since the inception of the cause of action." Kaplan, 49 F.3d at 1370 (internal quotation marks and citation omitted). Delay can contribute to a finding of prejudice, for "expense, delay, and wear and tear on individuals and companies count toward prejudice." Id. (internal quotation marks and citation omitted).

    **C.    Summary Judgment**

Summary judgment is appropriate where "there is no genuine issue as to any material fact" and "the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each cause of action upon which the moving party seeks judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party has sustained its burden, the nonmoving party must then identify specific facts, drawn from materials on file, that demonstrate that there is a dispute as to material facts on the elements that the moving party has contested. See Fed. R. Civ. P. 56(c). The nonmoving party must not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit." Lujan v. National Wildlife Fed'n, 497 U.S. 871, 888 (1990); see also Celotex Corp., 477 U.S. at 324. Summary judgment must be granted for the moving party if the nonmoving party "fails to make a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-635 CAS (AJWx) | Date | November 16, 2009 |
|---|---|---|---|
| Title | ROCK RIVER COMMUNICATIONS, INC. v. UNIVERSAL MUSIC GROUP, INC. | | |

showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322; see also Abromson v. American Pacific Corp., 114 F.3d 898, 902 (9th Cir. 1997).

In light of the facts presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter of law. See T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 631 & n.3 (9th Cir. 1987). When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted); Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co., 121 F.3d 1332, 1335 (9th Cir. 1997). Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue. See Matsushita, 475 U.S. at 587.

## III. DISCUSSION

### A. Review of Magistrate Judge's Order

On August 28, 2009, in response to defendant's motion for summary judgment, plaintiff noticed the depositions of four individuals to take place on October 8, 2009: (1) Lori Froeling ("Froeling"), former Senior Vice President, Business Affairs, Universal Music Enterprises; (2) Bruce Resnikoff ("Resnikoff"), President of Universal Music Enterprises, a subsidiary of Universal Music Group, Inc.; (3) Zach Horowitz ("Horowitz"), Chief Operating Officer of defendant Universal Music Group, Inc. and President and Chief Operating Officer of a number of subsidiaries within the Universal Music Group, Inc. family of companies; and (4) Michael Ostroff ("Ostroff"), General Counsel, Universal Music Group, Inc. Mot. at 1-2; Opp'n at 7. On September 23, 2009, defendant filed its application for a protective order to quash the depositions of Horowitz and Resnikoff. Mot. at 2. On October 2, 2009, the Magistrate Judge granted defendant's ex parte application. Opp'n at 3; Blecher Decl., Ex. 1. The Magistrate Judge found that "[b]ased on the present record, it appears that plaintiff can more efficiently obtain the information it presently needs from the depositions of Ostroff and Froeling, which already have been scheduled." Blecher Decl., Ex. 1.

Plaintiff argues that the Magistrate Judge's ruling "cannot be allowed to stand,"

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-635 CAS (AJWx) | Date | November 16, 2009 |
|---|---|---|---|
| Title | ROCK RIVER COMMUNICATIONS, INC. v. UNIVERSAL MUSIC GROUP, INC. | | |

because it quashed the depositions of two key witnesses involved in the decision-making process to interfere with plaintiff's album. Mot. at 1-2. Plaintiff asserts that the privilege log reflects 210 emails that bear on the issue of whether defendant interfered with the distribution of plaintiff's "Roots Rocks Remixed" album. Id. at 2-3. Plaintiff asserts that of the 210 emails, at least 24 were authored by Resnikoff, and he received at least an additional 28 emails on the subject within a three and a half month period. Id. at 3. Plaintiffs asserts that Horowitz, Resnikoff's boss, wrote two emails and received an additional 13 emails in September and early October of 2007. Id. Plaintiff argues that additionally both Resnikoff and Horowitz "are involved in" nonprivileged emails with plaintiff or third parties. Id. Plaintiff further argues that the Magistrate Judge made his ruling even though the Court suggested at the hearing on September 14, 2009, that "any discovery that would help identify a defendant in this case and over whom there's jurisdiction, I would think would be fair game because it goes to the motion for summary judgment and whether it should be with prejudice or without prejudice." Id. (quoting Blecher Decl. Ex. 7).

Plaintiff contends that taking the depositions of Resnikoff and Horowitz would not violate the "apex witness" rule because the depositions were only scheduled for two hours, not the seven permitted by Fed. R. Civ. P. 26. Id. at 4. Plaintiff further contends that while the "apex witness" rule applies to an official at the highest level of corporate management where that "high-level decision maker [is] removed from the daily subjects of litigation [and] has no unique personal knowledge of the facts at issue," here the two prospective deponents were not removed from the subject matter and had personal knowledge of the facts. Id. at 4 (quoting Celerity, Inc. v. Ultra Clean Holding, Inc., No. 05-4374, 2007 WL 205067, at *3 (N.D. Cal. Jan. 25, 2007)).

Plaintiff further argues that on October 8, 2009, plaintiff took the depositions of Froeling and Ostroff, but that neither shed significant light on the summary judgment issues now before the Court. Id. at 4. For example, plaintiff asserts that Froeling admitted that she is "not a good witness" to explain the structure of the company. Id. at 5. Plaintiff asserts that Ostroff "was only modestly more helpful" in explaining the corporate structure. Id. at 6.

Defendant responds that the Magistrate Judge's ruling that the depositions of Resnikoff and Horowitz were unnecessary was not "clearly erroneous." Opp'n at 4. Defendant argues that because Resnikoff works for UMG Recordings, Inc., not Universal

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-635 CAS (AJWx) | Date | November 16, 2009 |
|---|---|---|---|
| Title | ROCK RIVER COMMUNICATIONS, INC. v. UNIVERSAL MUSIC GROUP, INC. | | |

Music Group, Inc., his deposition is not relevant to the issue of whether Universal Music Group, Inc. is a correct defendant. Id. (citing United States v. Bestfoods, 524 U.S. 51, 61 (1998) ("It is a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation (so-called because of control through ownership of another corporation's stock) is not liable for the acts of its subsidiaries.") (internal quotations omitted)). Therefore, defendant argues that Resnikoff's mere status as an employee of a division of a subsidiary whose ultimate parent is Universal Music Group, Inc., simply cannot bind defendant. Id. at 5. Defendant further argues that Resnikoff's deposition would be duplicative to Froeling's deposition, because Froeling worked for the same entity that employed Resnikoff, and she reported directly to him. Id. Moreover, defendant asserts that Froeling, and not Resnikoff, was the main Universal Music Enterprises representative involved in the dispute at issue. Id.

Defendant asserts that when Horowitz received a document called for by plaintiff's document requests, the Court should presume that he was acting on behalf of the subsidiaries that employ him, and not the parent—Universal Music Group, Inc.—for whom he acts as a mere officer. Id. at 6 (citing Bestfoods, 524 U.S. at 69-70). Defendant further contends that to the extent that plaintiff intends to pursue a theory that "dual officership" is sufficient to bind Universal Music Group, Inc., despite the case law to the contrary, plaintiff already asked Ostroff a multitude of questions on the very issue because Ostroff is also a dual officer. Id. at 7.

Defendant argues that both Horowitz and Resnikoff are "apex witnesses," and do not have "unique, first hand, non-repetitive knowledge of the facts at issue in the case." Id. at 7 (quoting Celerity, Inc., 2007 WL 205067, at *3; citing WebSideStory, Inc. v. NetRatings, Inc., No. 06-408, 2007 WL 1120567, at *3 (S.D. Cal. Apr. 6, 2007)). Defendant further argues that "the information sought [by the plaintiff] can be obtained through less intrusive discovery methods."[2] Id. at 7-8 (quoting Celerity, Inc., 2007 WL

---

[2] Defendant argues that plaintiff misstates the applicable legal standard, suggesting that if an "apex witness" has any personal knowledge whatsoever of the facts at issue, then he or she is subject to deposition. Opp'n at 8. Instead, defendant contends that a court deciding whether to depose an "apex witness" must consider: "(1) whether or not the high-level deponent has unique first-hand, non-repetitive knowledge of the facts at issue in the case and (2) whether the party seeking the deposition has exhausted other less

(continued...)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-635 CAS (AJWx) | Date | November 16, 2009 |
|---|---|---|---|
| Title | ROCK RIVER COMMUNICATIONS, INC. v. UNIVERSAL MUSIC GROUP, INC. | | |

205067, at *3). Defendant contends that even though Horowitz holds a position as an officer at Universal Music Group, Inc., Resnikoff is President of Universal Music Enterprises, and Resnikoff was at least copied on certain emails that were produced in this litigation, the taking of their depositions is not relevant to answering the largely legal questions of: (1) whether the fact that Horowitz is an officer of both subsidiaries and the parent holding company means that when he takes action, he is acting on behalf of each and every company for which he is an officer, and (2) whether the fact that Resnikoff and Froeling were employed by a division of UMG Recordings, Inc. means that UMG Recordings, Inc. or Universal Music Group, Inc., are proper parties. Id. at 8-9. Furthermore, defendant contends that it has already responded to requests for production, interrogatories, and requests for admission, which all go precisely to the issue at hand, including: "(1) requests seeking information regarding the employer, title, duties, and responsibilities of each of the putative deponents; (2) requests seeking information regarding the names of the attorneys involved in the legal dispute at issue; and (3) requests seeking information regarding the headquarters of Universal Music Group, Inc. and Universal Music Enterprises." Id. at 9.

Defendant contends that plaintiff has already deposed Ostroff, who is the sole declarant in support of defendant's summary judgment motion, and plaintiff has expressly cited to Ostroff's deposition testimony in support of its supplemental opposition thereto. Id. Indeed, defendant asserts that plaintiff was able to ask Ostroff about all facets of the corporate structure of Universal Music Group.[3] Id. Similarly, defendant argues that plaintiff already deposed Froeling, who along with Phil Cox ("Cox"), the Vice President

---

[2](...continued)
intrusive discovery methods." Id. (quoting WebSideStory, Inc., 2007 WL 1120567, at *3.

[3] Defendant contends that plaintiff was able to ask Ostroff during his deposition: (1) information regarding the use of the term "Universal Music Group"; (2) the interaction between the various subsidiaries within the Universal family of companies; (3) the specific business functions of various subsidiaries; (4) the operations of a number of music labels within the Universal Music Group; (5) questions regarding Ostroff's own job title and the job title of Horowitz; (6) the reporting structure for various employees within the Universal Music Group; and (7) the business functions of Universal Music Group International, Ltd. Opp'n at 10.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**O**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-635 CAS (AJWx) | Date | November 16, 2009 |
|---|---|---|---|
| Title | ROCK RIVER COMMUNICATIONS, INC. v. UNIVERSAL MUSIC GROUP, INC. | | |

of Business and Legal Affairs of United Music Group International, was the principal person negotiating this dispute with plaintiff in 2007. Id. at 10. In this deposition, defendant contends that plaintiff probed all facets of the instant dispute.[4] Id. at 10.

Defendant further argues that at oral argument, the Magistrate Judge spent a significant amount of time asking counsel about the documents that plaintiff believed supported its assertion that Horowitz was integrally involved in the instant dispute, but that his review of these documents revealed that Horowitz does not have unique, personal knowledge about the issues in dispute. Id. at 11. Indeed, defendant contends that in the first email relied upon by plaintiff, Horowitz received an unsolicited email from plaintiff about this dispute, and Horowitz responded by saying, "I'm probably not the best one to deal with this. What is the issue and I'll direct you to the right person." Id. Defendant argues that once Horowitz understood plaintiff's concern, he got plaintiff in touch with Froeling, who has already been deposed. Id.

Plaintiff replies that the Magistrate Judge's order is clearly erroneous because "there is no case which holds that the blocking of a deposition of an admittedly knowledgeable witness is permissible." Reply at 1-2 (citing 4 J. Moore & J. Lucas, MOORE'S FEDERAL PRACTICE ¶ 26.69 (3rd ed. 1976) ("It is very unusual for a court to prohibit the taking of a deposition altogether and absent extraordinary circumstances, such an order would likely be in error."); Investment Properties Int'l v. IOS, Ltd., 459 F.2d 705, 708 (2d Cir. 1972) ("[A]n order to vacate a notice of taking [a deposition] is generally regarded as both unusual and unfavorable.")). Plaintiff asserts that what United States v. Bestfoods, 524 U.S. 52 (1998), states about liability under the statutory wording of CERCLA is not relevant to this case, because this is not a CERCLA case. Id. at 3. Plaintiff asserts that under Section 2 of the Sherman Act, the parent and subsidiaries "must be viewed as a single economic unit," and thus defendant's argument that these executives cannot be deposed because of parent-subsidiary liability under CERCLA is erroneous. Id. (quoting Copperweld Corp. v. Independence Tube Corp., 467 U.S. 752 (1984)).

---

[4] Defendant contends that plaintiff probed Froeling about the following facets of the instant dispute: (1) the decision to send the cease and desist letter; (2) the tasks she performed in investigating the validity of the JAD license; (3) her understanding of the term "Universal Music Group"; and (4) the negotiations with plaintiff in 2007 related to a possible resolution of this dispute. Opp'n at 10.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-635 CAS (AJWx) | Date | November 16, 2009 |
|---|---|---|---|
| Title | ROCK RIVER COMMUNICATIONS, INC. v. UNIVERSAL MUSIC GROUP, INC. | | |

The Court finds that the Magistrate Judge's order is not clearly erroneous. See Fed. R. Civ. P. 72(a). Based on the record before the Magistrate Judge, it appeared that plaintiff could most efficiently obtain the information it needed solely from the depositions of Ostroff and Froeling, without additionally deposing Resnikoff and Horowitz. Now that depositions of Ostroff and Froeling have been taken, however, it seems that plaintiff has been unable to obtain the information it requires pursuant to Fed. R. Civ. Pro. 56(f) in order to properly oppose defendant's summary judgment motion. It appears from plaintiff's Rule 56(f) discovery to date that both Resnikoff and Horowitz can assist plaintiff in determining whether Universal Music Group, Inc. is a proper defendant, and in identifying any other defendants over whom this Court has jurisdiction. Furthermore, plaintiff has provided additional evidence from Froeling's deposition that Resnikoff was actively involved in the decision to block the distribution of plaintiff's album. Froeling Dep. at 31. Accordingly, this Court concludes that plaintiff may now depose both Resnikoff and Horowitz.

### B. Leave to Amend Pleadings Pursuant to Fed. R. Civ. Pro. 15

As a result of plaintiff's Rule 56(f) discovery and pursuant to Federal Rule of Civil Procedure 15(a), plaintiff seeks leave to file an FAC against two additional defendants: (1) UMG Recordings, Inc. and (2) Universal Music Group International, Ltd. Mot. at 1. Plaintiff argues that the parties have not yet embarked on meaningful discovery, because full merits discovery has been stayed to give defendant an opportunity to attack the complaint on Noerr grounds. Id. at 2-3 (citing Mosher v. Kane, 784 F.2d 1385, 1391 (9tth Cir. 1986) (granting leave to amend where parties had "not engaged in intensive discovery" and an "amended complaint would not unduly burden or prejudice defendant")). Thus, plaintiff asserts that allowing it to file a new complaint will not be a source of any appreciable delay in discovery or trial. Id. at 2. Plaintiff further argues that it does not amend the complaint in bad faith or for a dilatory motive, but for the legitimate purpose of adding defendants because of Universal Music Group, Inc.'s contention that it is not a proper party. Id. Plaintiff asserts that it was only after obtaining deposition confirmation on October 8, 2009 that the new defendants were among the decision-makers in blocking plaintiff's album that it was appropriate for it to move to amend the complaint. Id.

Plaintiff contends that no prejudice would result because the facts underlying the proposed amendments adding additional defendants are known by defendant. Id. at 3

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-635 CAS (AJWx) | Date | November 16, 2009 |
|---|---|---|---|
| Title | ROCK RIVER COMMUNICATIONS, INC. v. UNIVERSAL MUSIC GROUP, INC. | | |

(citing Sierra Club v. Union Oil Co., 813 F.2d 1480, 1493 (9th Cir. 1987) ("[W]here a defendant is on notice of the facts contained in an amendment to a compliant, there is no serious prejudice to the defendant in allowing the amendment.")). Plaintiff asserts that the new defendants are part of the Universal Music Group family of companies, will be represented by the same counsel, and will assert the same defenses. Id. at 4. Finally, plaintiff contends that an amendment to the complaint would not be futile in this circumstance, but instead states a "colorable" claim for relief. Id. (citing DCD Programs, LTD. v. Leighton, 833 F.3d 183, 188 (9th Cir. 1987)).

Defendant responds that the Court should deny leave to amend, because plaintiff delayed many months in seeking the amendment for tactical reasons. Opp'n at 15 (citing Contact Lumber Co. v. P.T. Moges Shipping Co., 918 F.2d 1446, 1454 (9th Cir. 1990) (leave properly denied where plaintiff failed to present issue in original or first amended complaint, and only sought to amend after court indicated it would grant dismissal); Texaco, Inc. v. Ponsoldt, 939 F.2d 794, 798-99 (9th Cir. 1991)). Defendant asserts that plaintiff was aware of the facts on which the amendment is based at the time it drafted the original complaint, but chose to draft the pleading differently. Id. (citing Kaplan v. Rose, 49 F.3d 1363, 1370 (9th Cir. 1994) (denying leave to amend where factual basis of amendment was known to plaintiff at inception of lawsuit, as evidenced by the complaint's reliance on documents setting forth those facts); Jackson v Bank of Hawaii, 902 F.2d 1385, 1388 (9th Cir. 1990) ("Although appellants argue that the evidence [relating to the amendment was] not 'fully flushed out' until [shortly before leave was sought], they cite no facts or theories gleaned from the additional discovery period to support this contention.").

Defendant asserts that plaintiff seeks to add Universal Music Group International as a defendant, on the basis that Cox, who works for Universal Music Group International, sent cease and desist letters in October 2007. Id. But defendant asserts that plaintiff has always known about this, because plaintiff attached Cox's October 1, 2007 cease and desist letter to prior versions of its complaint. Id. at 15-16. Defendant contends that this letter described Cox as "Vice President, Legal and Business Affairs, Universal Music Group International" with an address in London. Id. at 16. Defendant further contends that while plaintiff seeks to add UMG Recordings as a defendant on the allegation that it provided "advice, consent, and authorization" to Universal Music Group International in sending the cease and desist letters, plaintiff has known of UMG Recordings' role since well before it filed its original complaint. Id. Defendant argues that UMG Recordings is

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-635 CAS (AJWx) | Date | November 16, 2009 |
|---|---|---|---|
| Title | ROCK RIVER COMMUNICATIONS, INC. v. UNIVERSAL MUSIC GROUP, INC. | | |

the company whose division, Universal Music Enterprises, employed Resnikoff and Froeling, both of whom communicated with plaintiff regarding the dispute over plaintiff's album.  Id.  Defendant asserts that not only has plaintiff always known that Froeling and Resnikoff were working for Universal Music Enterprises, it has also known that Universal Music Enterprises is a division of UMG Recordings.  Id. at 17.  Defendant asserts that between October 2005 and September 2006, Billy Straus, the founder and then-CEO of Plaintiff Rock River Communications, Inc., exchanged numerous drafts of proposed deal memoranda and letter agreements with Froeling and others at Universal Music Enterprises, and that these drafts plainly identify Universal Music Enterprises as "a Division of UMG Recordings, Inc."  Id. (citing Tuttle Decl. Ex. G).  Furthermore, defendant contends that in 2007, 2008, and 2009 in three separate lawsuits, including this one, in which plaintiff's counsel has tried to sue Universal Music Group, Inc., counsel for defendant has informed plaintiff's counsel that Universal Music Group, Inc. is not a proper party.  Id.

     Defendant argues that plaintiff deliberately chose to bring its lawsuit against the parent holding company, Universal Music Group, Inc., alone, and to omit UMG International and UMG Recordings as parties, because: (1) it knew that UMG International is an English company over which this Court has no jurisdiction; (2) it knew that UMG Recordings played only an ancillary support role in the dispute, providing legal services and acting as a go-between among parties with which it had a pre-existing relationship, and thus bears no responsibility for the conduct alleged in the complaint; and (3) by suing the California-based parent holding company, plaintiff believed it would be entitled to seek discovery from all Universal Music Group companies worldwide, regardless of whether the Court had jurisdiction over those companies and regardless of whether those companies were themselves proper parties to the lawsuit.  Id. at 18-19.  Defendant argues that it was put through the burden and expense of bringing a motion for summary judgment on this issue even though defendant repeatedly notified plaintiff that it was not a proper party, and only because it did not learn any new relevant information about the entities at issue through additional burdensome discovery.  Id. at 19.

    Defendant argues that plaintiff's delay from January 31, 2008, when it commenced this suit, until October 16, 2009, when it finally sought leave to amend to add parties of which it was aware all along, is longer than the fifteen-month delay rejected in AmerisourceBergen, 465 F.3d at 953, and on par with the delay of nearly two years rejected in Texaco, 939 F.2d at 798-99.  Id. at 20.  Defendant argues that plaintiff asks this court to further delay its decision so that it can continue taking discovery from every

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-635 CAS (AJWx) | Date | November 16, 2009 |
|---|---|---|---|
| Title | ROCK RIVER COMMUNICATIONS, INC. v. UNIVERSAL MUSIC GROUP, INC. | | |

subsidiary in the Universal Music Group without having to put forward viable claims against those subsidiaries.  Id.  Defendant contends that it makes no difference that there is still time for discovery in this case, because in AmerisourceBergen, leave was denied notwithstanding that it had been sought more than three months before the cut-off for amended pleadings under the court's scheduling order, and more than eight months before the discovery cut-off.  Id. (citing 465 F.3d at 953).  Finally, defendant argues that plaintiff's dilatory tactics are part of a clear pattern in this litigation, and that there is nothing in the interest of justice that requires plaintiff to be given the opportunity to further delay the disposition of this case by adding parties that it knows it has no basis for suing here.  Id. at 21-22.

Plaintiff replies that defendant has failed to show that it would be harmed by naming the parties that defendant itself concedes participated in the conduct which gave rise to plaintiff's lawsuit.  Reply at 2-3, 11.  Plaintiff argues that its efforts to obtain information about the identities of the decision-makers and defendant's corporate structure have been met with resistance at every step.  Id. at 3.  Plaintiff further argues that plaintiff learned about defendant's corporate structure as a result of Rule 56(f) discovery.  Id.  Plaintiff contends that in defendant's written discovery responses served September 29, 2009, defendant for the first time stated under oath that Froeling and Resnikoff were employed by Universal Music Enterprises, an unincorporated division of UMG Recordings.  Id. at 9.  Further, plaintiff contends that defendants never agreed to produce organizational charts as to defendant's corporate structure and "job titles/employers/responsibilities."  Id.  Plaintiff argued that in Froeling's deposition on October 8, 2009, she "finger[ed]" Resnikoff as a key decision-maker involved in blocking plaintiff's album.  Id. at 4-6.  Plaintiff further argues that it offered to withdraw its discovery requests if defendant would simply stipulate as to the Universal Music Group, Inc., entity or entities it contends plaintiff should sue, but defendant refused.  Id. at 10.  Plaintiff asserts that in the October 1, 2009 hearing before the Magistrate Judge, the Court asked defendant's counsel, "Who should he be suing?" and that defendant's counsel stated, "we believe that the true entities involved are the foreign entities. . . . [W]e just don't think the onus is on us to determine for them who they should sue."  Id.

The Court finds that an analysis of the factors set forth in Johnson militate towards permitting plaintiff to amend its complaint.  See  356 F.3d at 1077 ("Five factors are taken into account to assess the propriety of a motion for leave to amend: bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-635 CAS (AJWx) | Date | November 16, 2009 |
|---|---|---|---|
| Title | ROCK RIVER COMMUNICATIONS, INC. v. UNIVERSAL MUSIC GROUP, INC. | | |

previously amended the complaint."). While it appears that plaintiff could have sought to add the additional defendants at an earlier date, it was not until discovery responses were received and depositions were taken by plaintiff in September and October 2009, that plaintiff could be certain that it was adding the correct additional defendants. Moreover, it is apparent that the corporate structure within Universal Music Group, Inc., is complicated, as even the two deponents who worked for years at senior levels within the family of companies were at times uncertain of the overall corporate structure, the interaction between the subsidiaries, and which officer worked for which subsidiary or entity. See Froeling Depo. & Ostroff Depo. The Court is mindful that plaintiff has filed four previous versions of its complaint. However, on balance the Court concludes that granting leave to amend is appropriate here. Accordingly, the Court GRANTS plaintiff's leave to file a fourth amended complaint to add UMG Recordings, Inc. and Universal Music Group International, Ltd. as additional defendants.

### C. Summary Judgment

Defendant argues that it is not liable for any of the acts complained of in the TAC based on its status as an indirect corporate parent. Mot. at 4; Sup. Mot. at 2. Plaintiff responds that defendant is responsible for the acts of its subsidiaries, and therefore is liable. Opp'n at 2; Sup. Opp'n at 2. Moreover, plaintiff requests that the Court continue the hearing on defendant's motion for summary judgment until the depositions of Resnikoff and Horowitz can be taken, as well as the deposition of Cox, the Vice President of Business and Legal Affairs of Universal Music Group International, who signed the cease and desist letter. Sup. Opp'n at 2.

Because this Court has granted plaintiff the opportunity to depose both Resnikoff and Horowitz to conclude its Rule 56(f) discovery, the Court finds it prudent to delay a decision on defendant's summary judgment motion until these depositions have been taken. The Court hereby continues the hearing on this issue until March 1, 2010, at 10am. Plaintiff shall submit supplemental evidence on or before February 1, 2010, and defendant shall respond thereto on or before February 19, 2010.

### IV. CONCLUSION

In accordance with the foregoing, the Court hereby DENIES plaintiff's motion for review of the Magistrate Judge's October 2, 2009 ruling, but concludes that under the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-635 CAS (AJWx) | Date | November 16, 2009 |
|---|---|---|---|
| Title | ROCK RIVER COMMUNICATIONS, INC. v. UNIVERSAL MUSIC GROUP, INC. | | |

present circumstances plaintiff may now depose both Resnikoff and Horowitz.  The Court GRANTS plaintiff's motion for leave to file a fourth amended complaint.  The Court postpones its decision on defendant's summary judgment motion until after plaintiff has taken its depositions of Resnikoff and Horowitz.

    IT IS SO ORDERED.

|  |  | 00 | : | 10 |
|---|---|---|---|---|
|  | Initials of Preparer |  | CMJ |  |