O

JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| ROCK RIVER COMMUNICATIONS, INC., <br><br> Plaintiff, <br><br> vs. <br><br> UNIVERSAL MUSIC GROUP, INC., ET AL.; <br><br> Defendants. | Case No. CV08-635 CAS (AJWx) <br><br> **ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S REMAINING CLAIM** |

## I. INTRODUCTION & BACKGROUND

Plaintiff Rock River Communications, Inc. is a producer, seller, and distributor of music records. Fourth Amended Complaint ("FAC") ¶ 4. In 2006, plaintiff created certain "remixed" recordings of reggae music originally recorded by Bob Marley and the Wailers between 1969 and 1972 ("the Recordings"). FAC ¶ 11. Plaintiff acquired licenses for the Recordings from a company called San Juan Music ("San Juan"). FAC ¶ 13. San Juan allegedly possessed a non-exclusive license for the Recordings that it had acquired from Lee Perry, the original producer of the Recordings. FAC ¶ 12.

Defendant Universal Music Group, Inc., is the owner of Island Records. FAC ¶ 10. Bob Marley recorded for Island Records between 1973 and his death in 1981, and defendant, through Island Records, controls the rights to a large percentage of Marley's recordings Id. Defendant allegedly acquired a non-exclusive interest in the Recordings through its acquisition of Polygram Group Canada and Sanctuary Records, both of which allegedly possessed non-exclusive rights to the Recordings. FAC ¶¶ 15, 16. Defendant also acquired an allegedly exclusive interest in the Recordings pursuant to a license from a company known as JAD.[1] FAC ¶ 17. In October 2007, defendant sent "cease and desist" letters to several distributors of plaintiff's remixed recordings, including some internet-based distributors, asserting that it had exclusive rights to the Recordings and threatening copyright infringement actions. FAC ¶ 28. Due to these threats, the distributors stopped distributing plaintiff's recordings. FAC ¶ 30.

On January 31, 2008, plaintiff filed a complaint claiming that defendant's "cease and desist" letters violated Section 2 of the Sherman Act and constituted the tort of intentional interference with prospective business advantage. After defendant filed a motion to dismiss, plaintiff filed its first amended complaint. On August 25, 2008, this Court granted in part and denied in part defendant's motion to dismiss plaintiff's first amended complaint with leave to amend. On September 15, 2008, plaintiff filed its second amended complaint. On December 22, 2008, the Court granted defendant's motion to dismiss with leave to amend. The Court further granted plaintiff 60 days within which to conduct discovery.

On April 2, 2009, plaintiff filed its third amended complaint alleging claims against defendant for (1) attempting to monopolize the reggae genre of sound recordings

---

[1] The license provides that "Subject to Clause 2.2, Licensor hereby grants to the Company an exclusive license during the Term and throughout the Territory [defined as 'the World'] to exercise any and all of the rights exercisable by a copyright owner in respect of the entire copyright (whether vested, contingent, or future) and all rights of action and all other rights of whatever nature. . . ." Groban Decl. Ex. A. at § 2.1

in the United States in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2; (2) restraining trade and threatening to create a monopoly in the reggae genre sound recordings market in violation of Section 7 of the Clayton Act, 15 U.S.C. § 18; (3) intentional interference with prospective economic advantage; and (4) knowingly and materially misrepresenting that plaintiff's album infringed defendant's copyright, in violation of the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 512(f).

On October 16, 2009, plaintiff filed a motion for leave to file a fourth amended complaint, and on November 16, 2009, the Court granted plaintiff's motion. Thereafter plaintiff filed its fourth amended complaint against defendants UMG Inc., UMG Recordings, and UMGI, alleging claims for (1) attempting to monopolize the reggae genre of sound recordings in the United States in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2; (2) restraining trade and threatening to create a monopoly in the reggae genre sound recordings market in violation of Section 7 of the Clayton Act, 15 U.S.C. § 18; (3) intentional interference with prospective economic advantage; and (4) knowingly and materially misrepresenting that plaintiff's album infringed defendants' copyright, in violation of the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 512(f).

On April 27, 2011, the Court granted defendants' motion for summary judgment with respect to plaintiff's first, second, and fourth claims, and denied defendants' motion for summary judgment on plaintiff's third claim. In the April 27, 2011 order, the Court also denied plaintiff's motion for summary judgment with respect to defendants' defenses.

On June 13, 2011, the Court held a hearing regarding the parties' respective motions in limine in anticipation of trial. In light of the Court's tentative ruling on defendants' motions in limine, defendants requested leave to file an additional summary judgment motion on plaintiff's remaining claim. With leave of Court, they filed the instant motion on June 15, 2011. On June 20, 2011, plaintiff filed an opposition to

defendants' motion. On June 23, 2011, defendants filed a reply in support of their motion; a corrected version of the reply brief was filed on June 24, 2011. Having carefully considered the parties' arguments, the Court finds and concludes as follows.

## II. LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine issue as to any material fact" and "the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each cause of action upon which the moving party seeks judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party has sustained its burden, the nonmoving party must then identify specific facts, drawn from materials on file, that demonstrate that there is a dispute as to material facts on the elements that the moving party has contested. See Fed. R. Civ. P. 56(c). The nonmoving party must not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); see also Celotex, 477 U.S. at 324. Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322; see also Abromson v. Am. Pac. Corp., 114 F.3d 898, 902 (9th Cir. 1997).

In light of the facts presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter of law. See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 631 & n.3 (9th Cir. 1987). When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted); Valley Nat'l Bank of Ariz. v.

A.E. Rouse & Co., 121 F.3d 1332, 1335 (9th Cir. 1997). Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue. See Matsushita, 475 U.S. at 587.

## III.  DISCUSSION

On June 13, 2011, at oral argument on the parties' motions in limine, the Court indicated in its tentative ruling that it was inclined to grant defendants' motion in limine that sought to preclude plaintiff "from presenting evidence or argument at trial regarding the alleged oral agreement between San Juan and Lee Perry by which San Juan allegedly acquired rights to the master sound recordings of Lively Up Yourself, Trenchtown Rock and Soul Shakedown Party [(collectively, the "Three Tracks")]." Defs' Mot. in Limine at 7. Defendants asserted that the only evidence supporting the alleged transfer of rights from Lee Perry to San Juan–the deposition testimony of Michael Chernow, the president of San Juan Music–was unreliable hearsay and therefore inadmissible for the purpose of demonstrating the existence of the oral agreement because Chernow testified that the had been told by his father that Lee Perry had granted rights to San Juan through an oral license agreement.[2] Id. at 5. In its opposition, plaintiff did not dispute the fact that the testimony at issue could not be offered to demonstrate the existence of the oral agreement, though it contended that the testimony was admissible to establish the state of mind of Mr. Chernow. Opp. to Defs' Motion in Limine at 2. In its tentative order, the Court indicated that it would grant the motion in limine, finding that the evidence was inadmissible hearsay to the extent plaintiff would offer it to demonstrate the existence of the oral agreement, and irrelevant to the extent plaintiffs would offer it to show Michael Chernow's state of mind. In light of the Court's tentative ruling,

---

[2] The alleged transfer of rights in the Three Tracks from Lee Perry to San Juan is relevant because Rock River's rights in these Tracks are derivative of San Juan's rights. "Rock River . . . asserted that 'Plaintiff derived its rights to [the Three Tracks] from San Juan Music. San Juan Music derived its rights to [the Three Tracks] from Lee Perry.' Maro Decl. Ex. E at 3." Mot. at 3.

defendants argued at the hearing that the Court should grant summary judgment in favor of defendants on plaintiff's remaining claim, contending that once this evidence was excluded, no admissible evidence remained that would demonstrate that plaintiff had a right to distribute the album at issue. Without this evidence, defendants asserted, plaintiff would be unable to show that defendants had interfered with a valid prospective economic advantage.

In their motion, defendants summarize the relevance of the failure of proof as to the validity of plaintiff's rights in the Three Tracks as follows: "If Rock River could not have released the album, it cannot sue Universal for 'interfering' with the effort to release it or collect the 'profits' Rock River would have made through the illegal release. The law reflects this obvious principle: if you could not have sold something in the marketplace (because doing so would have been illegal), you cannot sue someone for interfering with your unlawful efforts." Mot. at 4. Defendants cite numerous cases in various jurisdictions in support of the proposition "that 'interference' is actionable only when the 'business relationship' is lawful and legitimate."[3] Id. at 5. Because "an essential element of any tortious interference claim is proof of a lawful and legitimate business expectancy," defendants argue that if plaintiff does not have any admissible evidence on the issue of their license to release the Three Tracks, it cannot prove this element and therefore the claim must be dismissed. Reply at 2. Moreover, defendants argue, in light of the Court's tentative ruling on their motion in limine, "Rock River's argument on the merits with respect to *Noerr- Pennington* . . . has now become nonsensical. Rock River cannot possibly show that Universal was objectively unreasonable in its assertions of rights in the Three Tracks when Rock River itself has no evidence of

---

[3] The cases cited include Steinberg Moorad & Dunn, Inc. v. Dunn, No. CV 01-07009 RSWL (Rzx), 2002 WL 31968234 at *24 (C.D. Cal. Dec. 26, 2002); Cisterra Partners, LLC v. Irvine Co., No. GIC783959, 2003 WL 25545539 (Cal. Super. Ct. Mar. 28, 2003); and Societe Comptoir De L'Industrie Cotonniere v. Alexander's Department Stores, Inc., 190 F. Supp. 594 (S.D.N.Y. 1961), among others.

any rights in those same tracks. Rock River's complete failure of proof with respect to the Three Tracks means Universal's statement of superior rights is protected under *Noerr-Pennington*." Mot. at 10.

In opposition, plaintiff argues that defendants' motion fails because "UMG has made no showing of any fraud, wrongful conduct, or unclean hands on Rock River's part," nor has it "cited a *single* California interference with prospective economic advantage case which requires that a plaintiff must have an enforceable right." Opp. at 1-2.[4] Rather, plaintiff argues, it must only show that it had a business expectancy, which it has proven it had. Id. at 6.[5] Further, plaintiff argues, "the evidence overwhelmingly shows that Rock River had a legitimate business expectancy in connection with its Album," and therefore there is at least a question of fact on that issue that precludes

---

[4] In reply, defendants argue that plaintiff misconstrues its argument. "Universal's argument is not that Rock River must prove an enforceable contract with the various third-parties. Rather, Universal's position–supported by case authority from California and across the country–is that an essential element of a claim for tortious interference with a prospective economic advantage is a *lawful* and *legitimate* business expectancy." Reply at 5.

[5] Plaintiff contends that this case is distinguishable from Renaissance Realty, Inc. v. Soriano, 120 Cal. App. 3d Supp. 13, 17 (1981), because there is no evidence in this case that Rock River engaged in fraud, and distinguishable from A-Mark Coin Co. v. General Mills, Inc., 148 Cal. App. 3d 312, 322 (1983), because "[t]here is no prior adjudication" with respect to the rights to the Three Tracks. Opp. at 6-7. In reply, defendants argue that plaintiff's attempts to distinguish these cases "ignore the basic legal principles set forth in those cases; namely, that 'business or contractual relationship[s]' that are 'illegal or against public policy' 'cannot be the subject of the tort of interference with a business or contractual relationship.'" Reply at 3. Defendants contend that while the form the "illegality" took was different in Renaissance Realty and A-Mark Coin, that is a distinction without a difference. "[T]hat very same principle outlined in *Renaissance Realty* and *A-Mark Coin* means that if Rock River's sale and distribution of *Roots, Rock, Remixed* was unlawful because the album contained unlicensed tracks, Rock River may not recover in tort for Universal's (or anyone's) alleged interference. In other words, if Rock River cannot prove it had valid rights, it has no viable claim." Id. at 4.

7

summary judgment.[6] Id. at 8.

Plaintiff further asserts that it "obtained copyright registrations in all its remixed recordings on the Album, which are entitled to a statutory presumption of ownership and validity," and that it has "has a fully executed license [from San Juan] for *all* of the master recordings on the Album."[7] Id. at 7. Moreover, plaintiff contends, "[a]s UMG knows, San Juan has been widely licensing these 1969-72 Marley master recordings to various labels for 30 years," and "UMG's failure to bring any infringement claim against Rock River or San Juan speaks volumes about the legitimacy of any such claim."[8] Id. at 2, 9. Plaintiff further adds that "[b]etween 2003-2007, 45 different labels . . . produced

---

[6] With respect to the Court's tentative ruling on defendants' motion in limine, plaintiff asserts that "[i]f the enforceability of Rock River's executed license with San Juan is placed in issue, as UMG is attempting here to do, then the Court's exclusion of the Chernow testimony about San Juan's arrangement with Lee Perry is unfairly prejudicial. If the Court were to admit Mr. Chernow's testimony, the record would properly reflect that San Juan believed it had a valid right to license the Three Tracks, and by licensing them repeatedly over the last 30 years, conducted its business on that premise, and Rock River relied on San Juan's warranties, representations, and indemnifications in Rock River's license agreement for the Three Tracks." Opp. at 4-5.

[7] Defendants contend in reply that plaintiff's argument regarding the presumption that should arise from their copyright registration of the remixed recordings on the album fails because "Rock River's copyright certificates expressly 'exclude' any claim of rights in the original masters." Id. at 7, citing Daniel Decl. ¶ 31 and Ex. 12. Moreover, defendants argue, "the statutory presumption on which Rock River pins its hopes cannot possibly have any bearing on this case. The Three Tracks are pre-1972 sound recordings, and therefore are not governed by federal copyright law." Reply at 7, citing 17 U.S.C. § 301(c). Further, defendants argue that Rock River's licensing agreement with San Juan is insufficient to demonstrate the validity of the release of the album because it does not address all of the links in the chain of title. The "agreement establishes only that San Juan purported to license certain tracks to Rock River. It does not establish San Juan actually had valid rights to the contract." Reply at 9.

[8] In reply, defendants contend these facts are irrelevant as "no rights in intellectual property are acquired simply by acting as if you own that intellectual property." Reply at 6.

8

at least 73 different albums featuring pre-1972 Marley recordings, and at least 14 of the 73 albums were licensed from San Juan. . . . Neither JAD nor UMG sued or obtained an injunction to stop any of these releases; therefore, UMG should not now be able to indirectly challenge San Juan's rights after repeatedly failing to do so, and after Rock River has invested substantial time and resources into the Album." Id. at 10.  Therefore, plaintiff argues, laches, based in part on JAD's "pattern of inaction," bars defendants' instant arguments.[9] Id.

In reply, defendants argue that "Rock River's opposition presents a smorgasbord of irrelevant arguments.  The lion's share of [their] brief appears to be focused on the issue of whether it was objectively reasonable as a matter of law for Universal to assert that Universal had exclusive rights.  But, of course, Universal's conduct is not even an issue on this motion, nor can it be.  Universal's conduct does not become an issue unless and until Rock River proves that it had the right to release the album."  Reply at 2.

The Court concludes that defendants' motion for summary judgment on plaintiff's remaining claim should be granted.  As indicated in its tentative ruling on defendant's motion in limine, the Court finds that the deposition of Michael Chernow with respect to the oral agreement at issue is inadmissible, unreliable hearsay to the extent it would be used to demonstrate ownership of the Three Tracks.[10]  The Court further concludes that

---

[9] With respect to plaintiff's argument that laches bars dismissal, defendants argue that "[l]aches has nothing to do with Rock River's failure to offer any evidence in support of its claim to valid rights.  Moreover, laches is an equitable defense to be asserted by defendants, it is not an affirmative claim to be made by a plaintiff." Reply at 10.

[10] To the extent plaintiff offers San Juan's history of licensing the songs to prove that it, in fact, had the power to so license those songs, the argument is unavailing. Cf. Societe Comptoir De L'Industrie Cotonniere v. Alexander's Dep't Stores, Inc., 190 F. Supp. 594 (S.D.N.Y. 1961) ("One who has promised to give more than he has power to give cannot create that power by making the promise").  Though not explicitly argued by the parties, the Court has also considered, and rejected, the possibility that the warranties in the contract between San Juan and Rock River could be used by plaintiff to prove their truth,
(continued...)

plaintiff does not have any other admissible evidence to show a valid chain of title that would give them the legal right to distribute "Roots, Rock, Remixed." Without this evidence, plaintiff cannot demonstrate that it had a legal, valid business expectancy with which defendants could have interfered. See Cal. Civ. Code § 980; cf. 24/7 Records, Inc. v. Sony Music Entertainment Co., 2004 WL 2093132 at *5 (S.D.N.Y. Sept. 20, 2004) (holding that a distribution contract became "a bargain to commit an illegal act" where plaintiff did not and was not able to secure a valid license in the underlying recording). As this is a necessary element of the tort of intentional interference with prospective economic advantage, plaintiff's claim fails. See Steinberg Moorad & Dunn, 2002 WL 31969234 at *24, Renaissance Realty, 120 Cal. App. 3d Supp. at 17. The Court further concludes that the evidence cited by plaintiff with respect to their copyright registration and previous licensing of the tracks by San Juan does not cure this deficiency. At most, as discussed in the Court's order on the prior motions for summary judgment, this evidence raises a question of fact with respect to the objective reasonableness of defendants' position. However, defendants' objective reasonableness is relevant only to defendant's Noerr-Pennington defense, and therefore the issue does not arise unless and until plaintiffs can prove their prima facie case. Plaintiff's failure of proof on the issue of the ownership of the Three Tracks is fatal to their ability to do so.

**IV. CONCLUSION**

---

[10](...continued)
(i.e., the validity of San Juan's rights in the Three Tracks). See World Thrust Films, Inc. v. International Family Entertainment, Inc., 1996 WL 60597 (S.D. Fl. Aug. 1, 1996) ("The warranty, standing alone, is not persuasive to the Court because it is clear from the evidence that the copyright interests involved in this case have been treated cavalierly . . . to the point that it is extremely difficult now to unravel who has what rights and what the scope of those rights are or were at any particular point in time"). Moreover, the Court concludes that they are not admissible under Fed. R. Evid. 803(15), which applies to "statements in documents affecting an interest in property," because a "non-exclusive license is not an ownership interest." Pamfiloff v. Giant Records, Inc., 794 F. Supp. 933 (N.D. Cal. 1992).

In light of the foregoing, the Court GRANTS defendants' motion for summary judgment on plaintiff's remaining claim.

IT IS SO ORDERED.

Dated: August 9, 2011

_____
CHRISTINA A. SNYDER
UNITED STATES DISTRICT JUDGE